# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THOMAS DAVIS,

                    Petitioner,                        Case Number: 02-CV-75063

v.                                           HON. ARTHUR J. TARNOW

RAYMOND BOOKER,

                    Respondent.

_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for second-degree murder and possession of a firearm during the commission of a felony. The Court appointed counsel to represent Petitioner. Counsel filed an amended petition. The Court has conducted an evidentiary hearing regarding Petitioner's ineffective assistance of trial and appellate counsel claims. The Court grants a conditional writ of habeas corpus because Petitioner was deprived of his right to the effective assistance of trial and appellate counsel and because the prosecutor committed misconduct. The Court finds that trial and appellate counsel were ineffective in failing to locate and interview a key witness, Todd Selma. Trial counsel was also ineffective in failing to meet privately with Petitioner until eight days before trial and failing to request criminal histories for prosecution witnesses. Finally, the Court finds that the prosecutor engaged in misconduct by improperly vouching for the credibility of a prosecution witness.

Davis v. Booker, No. 02-75063

## I. Background

Petitioner's convictions arise from the shooting death of Troy Prewitt on September 14, 1998, in the city of Inkster.  It was undisputed at trial that Petitioner and John Wilder went to a strip-mall parking lot in Inkster to obtain drugs on that date.  The prosecution's theory of the case was that the men went to buy drugs "on credit" because neither man had any cash.  After Derrick Glaze refused to give the men drugs on credit, Troy Prewitt, another drug dealer entered the parking lot.  Wilder asked Prewitt to give the men drugs on credit, Prewitt declined. According to the prosecution's case, moments later, Prewitt approached the passenger side of Petitioner's vehicle, where Petitioner was seated.  The men spoke and then Petitioner grabbed Prewitt's drugs, while Wilder, in the driver's seat, slowly drove off.  Prewitt ran alongside the car, trying to retrieve his drugs.  A shot was fired and Prewitt fell to the ground.

Wilder, who was arrested later that evening, implicated Petitioner as the passenger and the shooter.  Wilder admitted that he and Petitioner went to the parking lot to obtain drugs on credit and admitted he intended to drive off without paying for the drugs, but he denied knowing defendant had a gun before hearing the gunshot.

Two witnesses, Dean Rochelle and Derrick Glaze, identified Petitioner as the shooter. Dean Rochelle testified that he was present at the scene of the shooting for the purpose of selling drugs.  At approximately 2:00 p.m., he observed Wilder drive in the parking lot in a black station wagon.  Petitioner was inside the car with him.  Troy Prewitt arrived in the parking lot, exited his vehicle, and approached Petitioner and Wilder's car.  Rochelle testified he saw Petitioner, seated in the passenger seat, grab Prewitt's drugs.  The vehicle began moving.  Rochelle heard a

2

Davis v. Booker, No. 02-75063

gunshot and saw Petitioner shoot Prewitt.  During cross-examination, Rochelle admitted that, on the day he gave a statement to police regarding this case, he also gave a statement regarding another murder case.  He admitted that the information he gave regarding the other murder case was fabricated because he was pressured by police.

Derrick Glaze testified that he was present at the scene of the shooting for the purpose of selling drugs.  Wilder, who had arrived at the parking lot with Petitioner, attempted to obtain drugs from Glaze on credit.  Glaze declined to extend credit.  Glaze testified that he observed Wilder exit his vehicle to talk to Prewitt.  Wilder then reentered his vehicle and Prewitt stood on the passenger side, where Petitioner was seated.  Glaze testified that Petitioner grabbed a bag of drugs from Prewitt and the car began moving.  He saw Petitioner draw a gun and heard a gunshot.  Glaze denied seeing anyone else in the vehicle, but, at the preliminary examination, testified that he saw a black woman in the vehicle.  When initially questioned by police immediately after the shooting, Glaze failed to inform police that he saw who fired the gun or that he saw Petitioner with a gun.  In a written statement given to police, Glaze also failed to mention that he saw Petitioner with a gun.

The Court will discuss additional pertinent testimony below.

## II.  Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder and possession of a firearm during the commission of a felony.  He was sentenced as a habitual offender to 30 to 60 years' imprisonment for the second-degree murder

Davis v. Booker, No. 02-75063

conviction, to be served consecutively to two years' imprisonment for the felony-firearm

conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising the following

claims:

I.    There is reversible error where the prosecutor improperly vouched for a disputed
accomplice witness who clearly had criminal liability.

II.   A trial court commits reversible error by failing to make a prompt response to the
jury's request to rehear the testimony of the disputed accomplice, John Wilder, a
*res gestae* witness, Derrick Glaze, who had made false statements to the police
and the medical examiner.

III.  Thomas Davis was denied his right to counsel where his appointed attorney was
not present during deliberations when the jury made a request to rehear testimony,
which the trial just did not respond to promptly.

IV.   The trial court commits error where, after being apprised of defendant's request
for production of a witness who heard John Wilder confess to being the "shooter,"
fails to conduct a hearing on the police's supposed efforts to locate the witness.

V.    Where defendant made a pro per request for a hearing on ineffective assistance of
counsel before sentencing, the trial court should have conducted a hearing
allowing defendant to make a factual record.

Petitioner also filed a motion to remand for an evidentiary hearing pursuant to *People v.

Ginther*, 390 Mich. 476 (1973).

The Michigan Court of Appeals remanded the matter for an evidentiary hearing on

Petitioner's ineffective assistance of counsel claim.

Following the hearing, Petitioner filed a supplemental brief raising the following

additional ineffective assistance of counsel claims:

I.    Counsel was ineffective in failing to produce Todd Selma as a defense witness.

4

Davis v. Booker, No. 02-75063

II.      Counsel was ineffective in failing to impeach a prosecution witness with a prior retail fraud felony conviction.

III.     Petitioner was deprived of his right to counsel because counsel was absent when the jury requested testimony be read back.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Davis*, No. 221703 (Mich. Ct. App. July 27, 2001).  Petitioner's subsequent application for leave to appeal in the Michigan Supreme Court was denied.  *People v. Davis*, No. 119980 (Mich. March 4, 2002).

Petitioner then filed a petition for habeas corpus relief on December 24, 2002. Thereafter, he filed an amended petition asserting a claim of ineffective assistance of appellate counsel.  Petitioner admitted that the ineffective assistance of appellate counsel claim had not been exhausted in state court.  The Court, therefore, administratively closed the case and stayed further proceedings to allow Petitioner to return to state court to exhaust his ineffective assistance of appellate counsel claim.

Petitioner filed a motion for relief from judgment in state court raising the following claims:

I.       Defendant was deprived of his right to effective assistance of appellate counsel in several ways including his failure to file the pro per pleading or amend his own brief to add the additional witnesses or to secure the presence of Mr. Todd Selma, Mr. James Askew, Mr. Julius Pasley, and Mr. Preston for the *Ginther* hearing, and his failure to consolidate Docket No. 218315 on his direct appeal.

II.      Defendant was deprived of his right to effective assistance of appellate counsel for failing to raise the claim that the prosecutor suppressed and withheld evidence favorable to the defense on direct appeal.

III.     Is the payment for appellate counsel in this case, and generally, so inadequate as to constitute a denial of his right to reasonable compensation and a violation of

5

Davis v. Booker, No. 02-75063

the Michigan Constitution and the Sixth Amendment right to the effective
assistance of counsel where there is no provision for the appointment of
investigators or other support personnel to assist appellate counsel in locating and
interviewing witnesses and the payment to attorneys is too low?

The trial court denied the ineffective assistance of appellate counsel claims for lack of

merit. *People v. Davis*, No. 98-010911-01 (Wayne County Circuit Court Aug. 26, 2005).

Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and

Michigan Supreme Court. Both Michigan appellate courts denied leave to appeal "for failure to

meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Davis*,

No. 271181 (Mich. Ct. App. Dec. 27, 2006); *People v. Davis*, No. 133001 (Mich. May 30, 2007).

Petitioner returned to federal court and his habeas proceeding was reopened. Petitioner

raises the following claims in his habeas petition:

I.     A due process violation occurred where the prosecution improperly vouched for a
       disputed accomplice witness who clearly had criminal liability.

II.    The trial court erred by failing to make a prompt response to the jury's request to
       rehear the testimony of the disputed accomplice, John Wilder, and a res gestae
       witness, Derrick Glaze, who had made false statements to the police and the
       medical examiner in violation of due process.

III.   Thomas Davis was denied his right to counsel where his appointed attorney was
       not present during deliberations when the jury made a request to rehear testimony,
       which the trial judge did not respond to promptly.

IV.    The trial court committed error where, after being apprised of Defendant's request
       for production of a witness who heard John Wilder confess to being the "shooter,"
       failed to conduct a hearing on efforts to locate the witness.

V.     Thomas Davis was deprived of his right to the effective assistance of counsel
       under both the state and federal constitutions.

VI.    Mr. Davis was deprived of his right to the effective assistance of appellate
       counsel in several ways, including his failure to file pro per pleading or amend his

6

Davis v. Booker, No. 02-75063

own brief to add the additional issues, or to secure the presence of Todd Selma, James Askew, Julius Paisley, and Preston Lyons for the Ginther hearing, and his failure to consolidate Docket No. 218315-C on his direct appeal, under the federal constitution.

VII.  Mr. Davis was deprived of his right to the effective assistance of appellate counsel for failing to raise the claim that the prosecutor suppressed and withheld evidence favorable to the defense on direct appeal.

VIII.  The payment for appellate counsel in this case, and generally, is so inadequate as to constitute a denial of his right to reasonable compensation and a violation of the Sixth Amendment right to the effective assistance of counsel where there is no provision for the appointment of investigators or other support personnel to assist appellate counsel in locating and interviewing witnesses and the payment to attorneys is too low.

This Court conducted an evidentiary hearing regarding Petitioner's ineffective assistance of trial and appellate counsel claims.

### III.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

7

Davis v. Booker, No. 02-75063

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

## IV.  Discussion

### A.  Ineffective Assistance of Counsel

Petitioner argues that he was denied the right to the effective assistance of trial counsel by his court-appointed attorney. Petitioner argues that counsel was ineffective based upon a failure to investigate and a failure to consult with him prior to trial. Specifically, counsel failed to meet with Petitioner in a location where the two could converse privately until eight days before trial, failed to make use of (and was unaware of the appointment of) a private investigator, failed to locate or interview potentially useful witnesses, including Todd Selma, to whom Wilder purportedly confessed that he, not Petitioner, was the shooter, and failed to impeach prosecution witnesses with convictions involving dishonesty. Petitioner also argues that his appellate

8

Davis v. Booker, No. 02-75063

attorney was ineffective in failing to secure the testimony of Todd Selma, James Askew, Julius Pasley, or Preston Lyons for the state court evidentiary hearing.[1]

### State Court Evidentiary Hearing

On direct appeal, the Michigan Court of Appeals remanded the matter to the trial court for an evidentiary hearing pursuant to *People v. Ginther*, 340 Mich. 476 (1973) regarding Petitioner's ineffective assistance of counsel claims. Petitioner's trial attorney testified at the *Ginther* hearing. He testified that he was appointed to represent Petitioner in mid-December 1998. He did not have a private meeting with his client until June 13, 1999 (trial commenced on June 21, 1999). Trial counsel testified that, although he did not have a private meeting with Petitioner until June 13, 1999, he conferred with his client several times prior to that time when Petitioner was brought to the courthouse for court proceedings. The attorney was unaware that the court had authorized the appointment of a private investigator in November 1998 to locate missing witnesses. He testified that he first heard the names of potential witnesses Todd Selma, Dean Rochelle and Charles Thomas on June 13, 1999. Counsel asked Inkster Police Department detective Hines to locate Todd Selma. Detective Hines was unable to do so, but counsel could not recall specifically what steps were taken by Hines to locate Selma. The attorney admitted being given a copy of a *pro se* motion filed by Petitioner regarding his first court-appointed attorney sometime in late 1998 or early 1999. The motion referenced the first attorney's failure to locate Todd Selma. However, counsel nevertheless testified that he was unaware of Selma's

---

[1] Petitioner presents several additional ineffective assistance of appellate counsel claims. These claims are addressed *infra*.

9

Davis v. Booker, No. 02-75063

potential as a witness until June 1999.  He did not recall being unavailable to the court during

jury deliberations.  He also testified that he could not recall requesting a criminal history for

Derrick Glaze.  Counsel did not impeach Glaze at trial with a prior conviction involving theft

and dishonesty.

Petitioner also testified at the state court evidentiary hearing.  He testified that trial

counsel was appointed to represented him in December 1998.  He testified that counsel met with

him at the lockup on December 15, 1998, but they did not discuss the substance of his case at

that time.  Counsel indicated that he would meet with Petitioner at the Wayne County Jail, but

failed to do so until June 13, 1999.  Petitioner testified that he attempted several times to

communicate with his lawyer by sending him several letters.  Other than actually seeing counsel

during court proceedings, Petitioner did not meet privately with him until June 13, 1999.

Petitioner was never advised that the jury made a request to rehear testimony nor was he advised

that counsel would be unavailable while the jury was deliberating.

During the state court evidentiary hearing, the trial court judge noted that Selma was on

probation until June 25, 1999.

### 1.  Federal Court Evidentiary Hearing

This Court conducted an evidentiary hearing regarding Petitioner's ineffective assistance

of trial and appellate counsel claims.

Petitioner's trial attorney, testified at the evidentiary hearing.  His testimony was

generally consistent with that given in the state court evidentiary hearing.  He testified that he

was appointed to represent Petitioner approximately six months before Petitioner's trial

10

Davis v. Booker, No. 02-75063

commenced in June 1999.  He visited with Petitioner twice at the jail.  Once, on June 13, 1999,

about a week before trial commenced and once just as the trial began.  At the June 13, 1999

meeting, Petitioner asked counsel to locate witness Todd Selma.  Counsel testified that this was

the first he had heard Todd Selma's name mentioned.  Based upon Petitioner's request, counsel

asked the prosecutor and the officer in charge of the case to locate Todd Selma.  Counsel was

unaware that an investigator had been appointed on November 6, 1998, to help the defense in

this case.  (At the time the investigator was appointed, Petitioner was represented by a different,

assigned counsel.  Counsel testified that he and prior counsel never communicated with one

another.  Prior counsel never gave him a file.).  The only other times counsel met with Petitioner

were when Petitioner was brought to the lock-up behind the courtroom at the Recorder's Court

division of Wayne County Circuit Court.  At that location, he was required to speak to Petitioner

through a plexiglass window or through a grate.  The holding area did not provide a private area

where he and Petitioner could meet.

Petitioner also testified at the evidentiary hearing.  He testified that he first met trial

counsel on December 15, 1998, while he was housed in the bullpen adjacent to the courtroom.

They did not discuss the substance of his case at that time, nor did he feel that the conversation

was confidential.  He did not see counsel again until January 1999 for a bond hearing in Wayne

County Circuit Court.  Petitioner saw counsel in February 1999, for a scheduled pretrial

conference, during which the state court judge heard and denied Petitioner's *pro se* motion to

quash.  He did not have the opportunity to discuss the substance of the case with counsel at that

time.

11

Davis v. Booker, No. 02-75063

In January 1999, Petitioner asked his trial attorney to come to the jail to discuss the case. Counsel promised that he would, but did not come to the jail until June 13, 1999. Prior to that time, Petitioner had no private conversations with counsel. Petitioner attempted to secure a jail visit from counsel by writing several letters to him, asking the social service worker at the Wayne County Jail to contact him, and writing a letter to the trial judge asking for his assistance. Counsel failed to respond to any of the letters. Petitioner testified that, during his first private meeting with counsel on June 13, 1999, he gave counsel the names of several potential witnesses, including Todd Selma.

Petitioner also testified regarding the representation of his appellate counsel. Petitioner asked appellate counsel to obtain a statement or affidavit from Julius Pasley, James Askew, and Preston Lyons in anticipation of the *Ginther* hearing.[2] He also asked that Todd Selma be called to testify at the *Ginther* hearing. Appellate counsel did not present any of these witnesses at the *Ginther* hearing. Petitioner also noted that, after the *Ginther* hearing, he asked appellate counsel to file a *pro per* supplemental brief and counsel declined to do so.

Appellate counsel testified at the evidentiary hearing that he was appointed to represent Petitioner on his appeal of right from his second-degree murder conviction. He was informed by Petitioner that Todd Selma, if called as a witness at trial, would have testified that Wilder had confessed to him that he, not Petitioner, had been the gunman. Appellate counsel's only attempts to locate Selma were to call a telephone number Petitioner gave him for a relative of Selma's. Counsel called the number several times, but did not receive a response. He made no

---

[2] *People v. Ginther*, 390 Mich. 476 (1973).

12

Davis v. Booker, No. 02-75063

other attempts to locate Selma.  He did not attempt to speak with anyone in the probation department to ascertain whether Selma remained on probation or whether his last known address was available.

Appellate counsel testified that Petitioner also asked him to locate Preston Lyons, James Askew and Julius Pasley.  He testified that he never attempted to speak with any of these witnesses.

Julius Pasley testified that he was at the strip mall on the day of the shooting, but arrived after the shooting, when Prewitt was being removed in an ambulance.  While many who were congregated in the parking lot were discussing the shooting, Pasley did not hear anyone identify the shooter or the victim.  Several days later, Pasley had a conversation with Derrick Glaze, during which Glaze identified Wilder as the shooter.

James Askew testified that, when he was incarcerated at the Wayne County Jail in 1998, he had a conversation with another inmate, Julius Paisley, who informed Askew that Petitioner did not shoot Prewitt and that a man by the name of "Danny" had actually done the shooting.  He professed no personal, first-hand knowledge of the shooting.

Preston Morris Lyons testified that he also was housed in the Wayne County Jail in 1998. While he was incarcerated there he came in contact with an individual whose name he could not recall who said he was a witness to the Prewitt homicide.  This unidentified man informed Lyons that Petitioner did not shoot Prewitt, but was, instead, driving the car.

13

Davis v. Booker, No. 02-75063

## 2. State Court Decisions

Following the trial court evidentiary hearing, the trial court held that trial counsel was not

ineffective, stating in relevant part:

> [D]efendant contends that trial counsel was ineffective because counsel did not
> investigate and pursue defendant's contention that a co-defender, John Wilder,
> who was charged with and pled guilty to a charge of accessory after the fact,
> M.C.L.A. 750.505, confessed to the murder for which the defendant was tried and
> convicted. . . .
>
> Defendant asserts that prior to trial he informed trial counsel of Selma, but
> counsel failed to follow up and present Selma at the trial. Additionally, defendant
> proffers two other reasons that trial counsel was ineffective: counsel did not seek
> to impeach a prosecution witness (Derrick Glaze) on his prior convictions for
> retail fraud and counsel was not present for replay of trial testimony during the
> jury deliberation process.
>
> Trial counsel testified that the defendant told him about Selma and he tried to find
> Selma with the help of the prosecution and the officer in charge of the case, Det.
> Hines of the Inkster Police Department. With only the name and no further
> information, he was unsuccessful in finding Selma.
>
> Defendant was charged with second degree murder and felony firearm. John
> Wilder was charged as an accessory after the fact. Wilder pled guilty to the
> accessory charge and agreed to testify for the prosecution in exchange for five
> years probation. . . .
>
> This court is not persuaded that the defendant has shown that trial counsel was
> ineffective. . . . Defendant has not overcome the burden of the presumption of
> effective assistance of counsel. Defendant gave trial counsel a name and nothing
> else regarding Todd Selma. It is odd that the defendant did not get an address,
> phone number or some way to contact a person who might help his case. Trial
> counsel, within the limitations provided, with the assistance of the prosecution
> and the Inkster police, tried to find this person. Further, defendant's credibility is
> questionable since he did not testify at trial and did not inform the trial judge of
> any concerns about Todd Selma. Notwithstanding the credibility of his assertion
> that this person, Todd Selma, told him that Wilder confessed to the murder of
> Prewitt, there is no evidence whatsoever from several eyewitnesses that Wilder
> shot the deceased. The witnesses identified the passenger, who was the

14

Davis v. Booker, No. 02-75063

defendant, as the shooter.  Assuming that Selma had testified, at best his
testimony had limited impeachment value.

Defendant's other claims of ineffective assistance of counsel apart from his
claims of ineffective assistance regarding the alleged conversation with Selma are
without merit. . . . A defendant must also overcome the presumption that the
challenged action or inaction was trial strategy. . . . .The contention that counsel
was ineffective for failure to impeach one of the witnesses on retail fraud
conviction is without merit.

*People v. Davis*, No. 98-010911, slip op. at 1-2.

The Michigan Court of Appeals affirmed the trial court's opinion, stating, in pertinent

part:

Defendant's final claim is that he was denied effective assistance of counsel when
his trial attorney failed to timely locate defense witness Todd Selma (whom
defendant alleged would testimony that Wilder admitted being the shooter) and
when counsel failed to impeach one of the drug-dealer witnesses with 1992 and
1993 convictions for retail fraud.  We disagree.

A *Ginther* hearing was held in the trial court on July 21, 2000, and defendant
presented the testimony of his trial attorney and his own testimony.  Defendant
also submitted as an exhibit a "showup & photo identification record" received
through discovery that listed defendant and Todd Selma as part of a six person
lineup on September 18, 1998.  The prosecutor also stipulated that one trial
witness had been convicted of second-degree retail fraud in 1992 and first-degree
retail fraud in 1993.  The trial court denied defendant's motion for new trial.
To establish ineffective assistance of counsel, a defendant must show (1) that
counsel's performance was below an objective standard of reasonableness under
prevailing professional norms, and (2) that there is a reasonable probability that,
but for counsel's error, the result of the proceedings would have been different . .
.

In the present case, defendant's primary claim of ineffective assistance of counsel
is based on the argument that defendant's trial counsel failed to timely attempt to
locate, failed to produce, and thus failed to present testimony from an essential
defense witness.  However, defendant failed to present Selma's testimony on
remand.  Further, defendant failed to establish that additional efforts to locate
Selma would have been effective.  These failures amount to a failure to show
prejudice from counsel's alleged ineffectiveness.

15

Davis v. Booker, No. 02-75063

In *Pickens, supra*, the defendant claimed he was denied effective assistance of counsel because his trial attorney failed to file a notice of alibi and thus the trial court precluded the defense from presenting an alibi witness.  *Id.* at 304.  Our Supreme Court found that trial counsel's performance was inexcusable neglect and fell below the professional norm.  *Id.* at 327.  However, the Court went on to hold that defendant failed to prove prejudice when he failed to produce the witness at the Ginther hearing,  *id.*:

> Nevertheless, Pickens has failed to establish the required showing of prejudice. Although the alibi witness was subpoenaed, he did not testify at the evidentiary hearing. Instead, for unexplained reasons, Pickens waived his production. Accordingly, no evidence has been presented to establish that the alibi witness would have testified favorably at trial. In other words, Pickens failed to establish that the alibi witness' testimony would have altered the result of the proceeding. Because Pickens cannot show that there was a reasonable probability that the evidence would undermine confidence in the outcome of the trial, the decision of the Court of Appeals is reversed.

Applying these principles to the case at bar, there was no testimony that the missing witness was available to testify at trial.  No testimony was presented at the motion for new trial from the witness, or anyone else who knew the witness, or knew his whereabouts at the time of the trial, to indicate that the witness was even available to testify.  There was no showing that any earlier effort by defense counsel to locate the witness would have been successful.  Moreover, the record establishes that trial counsel relied on the statutory duty of the prosecutor and the police to provide assistance to produce the witness.  Trial counsel's testimony that the prosecutor and police used due diligence to find and produce the witness was not rebutted by any evidence at the hearing.  Thus, defendant failed to establish that counsel's performance was deficient and that he was prejudiced.

*People v. Davis,* slip op. at 4-5.

### 3.  Analysis

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner may

Davis v. Booker, No. 02-75063

show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" *Tinsley v. Million*, 399 F.3d 796, 802 (6th Cir. 2005), *quoting Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

"Because advocacy is an art and not a science, . . . [counsel's] strategic choices must be respected," if they were "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 at 690.  The Supreme Court explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689.

With regard to a claim that counsel was ineffective for failing to conduct an adequate investigation:

17

Davis v. Booker, No. 02-75063

> [D]ecisions made by trial counsel after "less than complete investigation," . . .
> "are reasonable precisely to the extent that reasonable professional judgments
> support the limitations on investigation.  In other words, counsel has a duty to
> make reasonable investigations or to make a reasonable decision that makes
> particular investigations unnecessary.  In any ineffectiveness case, a particular
> decision to investigate must be directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference to counsel's judgments."

*Brown v. Smith*, __ F.3d __, 2008 WL 5411899, * 4-5 (6th Cir. 2008), *quoting Strickland*, at

690-91.

### Todd Selma

### (1)  Ineffective Assistance of Trial Counsel

Petitioner provided counsel with information that John Wilder confessed to Todd Selma

that Wilder, not Petitioner, was the shooter.  This information, if established, would have

impugned the credibility of Wilder, a key prosecution witness.  However, counsel failed to

arrange for Selma's presence at trial.

The record shows that the information regarding Selma's potential testimony was

supplied to and available to counsel at least several months prior to trial in the form of

Petitioner's verbal statements to counsel and the *pro se* motion filed in the trial court regarding

representation by Petitioner's first court-appointed attorney.  Yet, counsel waited until eight days

prior to trial to try to locate this witness.  He relied upon a police investigator to locate Selma

without tapping a resource at his disposal, an investigator already approved by the court.

The Michigan Court of Appeals held that Petitioner failed to show that counsel was

ineffective in failing to locate Selma or that Petitioner was prejudiced by this failure.  The state

court rested its conclusion on the absence of any testimony at the *Ginther* hearing that (i) Selma

18

Davis v. Booker, No. 02-75063

would have been available to testify, (ii) earlier efforts to locate Selma would have been

successful, and (iii) the prosecutor and police failed to use due diligence to locate Selma.  The

state court did not address counsel's failure to utilize the investigator, counsel's general

obligation to investigate and prepare a defense, or the fact that Selma was on probation at the

time trial counsel admitted to first hearing his name.

 The Court accords counsel's trial strategy a great measure of deference, however, the

strategy must be "objectively reasonable," *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001),

and the "mere incantation of 'strategy' does not insulate attorney behavior from review."  *Fisher*

*v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002).  The Court finds that the state court's holding

that trial counsel was not ineffective is an unreasonable application of *Strickland*.

 When counsel is made aware that a potential witness may provide testimony beneficial to

the defense, counsel's failure to interview the potential witness is ineffective.  *Ramonez v.*

*Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007).  "The failure to interview key defense witnesses is

objectively unreasonable" under *Strickland*.  *Poindexter v. Booker*, No. 07-1795, 2008 WL

4997500, *5 (6th Cir. Nov. 24, 2008).  "Constitutionally effective counsel must develop trial

strategy in the true sense – not what bears a false label of 'strategy' – based on what

investigation reveals witnesses will actually testify to, not based on what counsel guesses they

might say in the absence of a full investigation."  *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th

Cir. 2007).

 In reaching its decision, the state court ignored the clear mandate of *Strickland*.  That is,

*Strickland* requires that "a particular decision to investigate must be directly assessed for

19

Davis v. Booker, No. 02-75063

reasonableness in all circumstances." *Strickland*, 466 U.S. at 690-91.  In this case, the state court failed to address counsel's failure to attempt to locate Selma sooner, and failed to addressed counsel's ignorance that an investigator had been appointed.  In addition, in noting that no evidence was presented at the *Ginther* hearing to show that Selma would have been available to testify, the state court ignored the trial court's finding that Selma was on probation until June 25, 1999, a finding which not only impugns efforts made by defense counsel to locate Selma, but also casts substantial doubt on the diligence with which police sought to locate Selma. Counsel's ignorance of the appointment of an investigator and the substance of the *pro se* motion which included a reference to Selma evidences a lack of engagement with the case until, at most, eight days before trial.

In this case, an attorney acting competently, would have attempted to locate and interview Todd Selma when initially made aware of his potential testimony.  In addition, an attorney acting competently would have discovered that the trial court had approved a private investigator and would have utilized that investigator to attempt to locate Selma rather than relying on police, and would have attempted to ascertain the identity of any additional potential witnesses to the shooting.  The requirement that an attorney conduct a reasonable investigation requires that an attorney commence investigation far enough in advance of trial to allow for time to pursue leads, interview witnesses and develop a defense strategy.  While defense counsel in this case developed a defense strategy, attempting to inculpate Wilder as the shooter, he failed to investigate and develop any facts which would have supported that theory.  In addition, at the state court evidentiary hearing, the trial court judge noted that Selma was on probation through

Davis v. Booker, No. 02-75063

June 25, 1999. Thus, if trial counsel had undertaken prompt and diligent efforts, Selma could

have been easily located while either incarcerated or serving a term of probation.

The Court next considers whether this claim satisfies the prejudice prong of *Strickland*.

To establish prejudice, Petitioner must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.

> A reasonable probability is a probability sufficient to undermine confidence in the
> outcome, ... but something less than a showing that the outcome more likely than
> not would have been different .... While the petitioner need not conclusively
> demonstrate his actual innocence, ... the focus should be on whether the result of
> the trial was fundamentally unfair or unreliable . . .

*Stewart v. Wolfenbarger*, 468 F.3d 338, 360 (6th Cir. 2006)*, quoting Bigelow*, 367 F.3d at 570

(additional internal quotation marks and citations omitted). "When determining prejudice, the

Court must consider the errors of counsel in total, against the totality of the evidence in the

case." 468 F.3d 338, 360 (6th Cir. 2007). A case in which the "verdict or conclusion [is] only

weakly supported by the record is more likely to have been affected by errors than one with

overwhelming record support." *Strickland*, 466 U.S. at 696. The Michigan Court of Appeals

held that Petitioner failed to establish prejudice because he did not establish what Selma's

testimony would have been had he been called to testify.

Respondent argues that Petitioner fails to establish prejudice in counsel's failure to call

Selma as a witness for two reasons: because a letter purportedly written by Selma in 2002

incriminates Petitioner and because Petitioner has presented no evidence to show how Selma

would have testified at trial.

21

Davis v. Booker, No. 02-75063

First, Petitioner has produced a copy of a March 26, 2002 letter purportedly written by Todd Selma to Petitioner. The substance of the letter is confused. Selma appears to simultaneously profess Petitioner's innocence while placing blame for the shooting on someone from New York. Considerable testimony was presented at the evidentiary hearing to show that Petitioner was called "New York" by several fellow prisoners. In the letter, Selma admits that he does not fully remember the details of his 1998 encounter with Wilder. The letter was written over three years after Selma's contact with Wilder at the Inkster County Jail. While the letter does not clearly and unequivocally exculpate Petitioner neither does it, as Respondent alleges, clearly and unequivocally inculpate him. Instead, the letter raises additional questions, including whether Selma believed that he was, as Respondent argues, writing to Wilder rather than Petitioner; whether Selma thought Wilder was known as "New York;" and whether Selma would have been able to clarify these ambiguities had he been located prior to trial. These questions may have been answered had counsel undertaken a vigorous, effective search for Selma.

Second, Respondent argues that Petitioner cannot establish prejudice because he has presented no evidence to show how Selma would have testified at trial. Respondent's argument gets to the heart of a failure to investigate claim. One of the dangers of an attorney's failure to investigate is that the opportunity to gather certain information and testimony will be irretrievably lost. Selma's knowledge of the case, as represented in the letter to Petitioner, raises many questions about the identity of the shooter and whether Wilder confessed to Selma. A reasonably competent attorney would have sought an interview with Selma based upon this affidavit. However, because counsel did not attempt to locate Selma until less than two weeks

22

Davis v. Booker, No. 02-75063

before trial, and, even then, failed to utilize a court-approved investigator to do so, Selma was not located.   The record before the Court shows that Selma was incarcerated or serving a term of probation until June 25, 1999.  While a petitioner's conclusory allegations that evidence may have been irretrievably lost as a result of an attorney's failure to investigate, may not establish prejudice, Petitioner's claims go beyond a conclusory allegation.  Petitioner has not presented Selma in federal court because Selma could not be located.  To hold that this failure to produce evidence regarding what his testimony would have been prevents a finding of prejudice would be to insulate counsel's failure to investigate from review.  The letter from Selma establishes that Selma has knowledge relevant to this matter.  Due to counsel's ineffectiveness, Selma was not located or interviewed.  The Court does not ask whether Petitioner "was ultimately innocent, but rather whether he was deprived a reasonable shot of acquittal." *Avery v. Prelesnik*, 548 F.3d 434, 439 (6th Cir. 2008).  The Court finds that counsel's failure to attempt to locate a witness who may have incriminated Wilder deprived Petitioner of a reasonable shot of acquittal and undermines the Court's confidence in the outcome of the trial.  The state court's finding to the contrary is an unreasonable application of *Strickland*.  Therefore, the Court grants habeas relief on this claim.

### (2)  Ineffective Assistance of Appellate Counsel

Petitioner also argues that appellate counsel's failure to produce Selma at the *Ginther* hearing was ineffective because, if Selma had been produced and preemptively addressed the foregoing questions raised by the Court of Appeals, there is a reasonable probability that the appellate court would have ruled differently.

Davis v. Booker, No. 02-75063

Respondent argues that this claim is procedurally barred.  The Sixth Circuit Court of Appeals has adopted the following four-part test to determine whether a claim has been procedurally defaulted:

> (1) the court must determine that there is a state procedural rule with which the petitioner failed to comply; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) the state procedural rule must have been an adequate and independent state procedural ground upon which the state could rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for his failure to follow the rule and that actual prejudice resulted from the alleged constitutional error.

*Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir.2002).

"Whether a state court has actually enforced a procedural sanction depends on whether 'the last state court from which the petitioner sought review . . .  invoked the stated procedural rule as a basis for its decision to reject reviewing the petitioner's federal claims.'"  *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007), *quoting Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004).  Petitioner first raised his claim ineffective assistance of appellate counsel claim during state collateral proceedings.  The Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal on the ground that Petitioner failed "to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)."  In *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000), and in *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002), the Sixth Circuit held that this language invokes a state procedural rule, which is sufficient to preclude federal habeas review.

Davis v. Booker, No. 02-75063

In contrast, in *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004), the Court of Appeals held that denials of leave to appeal by both Michigan appellate courts that were identical to those at issue in *Simpson* and *Borroughs*, did not invoke a state procedural rule sufficient to preclude federal habeas review. These seemingly inconsistent decisions can be resolved by considering the differences in the respective trial court decisions. In *Simpson* and *Burroughs*, the trial court did not address the merits of the petitioner's claims. In contrast, in *Abela*, the lower state court ruled on the merits of the petitioner's claims, but the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D). The Sixth Circuit concluded that, under the circumstances, *Simpson* and *Burroughs* were inapplicable and the petitioner's claims were not procedurally defaulted. See *Abela* 380 F.3d at 922-24. In *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir.2007), cert. denied, __ U.S. __, 128 S. Ct. 1897 (2008), the Sixth Circuit resolved the differences between the *Simpson* and *Burroughs* cases and *Abela* by concluding that Ivory's case was more like *Simpson* and *Burroughs* than *Abela* because no state court addressed the merits of Ivory's claims during post-conviction proceedings.

The pending case is similar to *Abela*. Although the state appellate courts relied on Michigan Court Rule 6.508(D), the trial court denied Petitioner's ineffective assistance of counsel claim "for lack of merit." *People v. Davis*, No. 98-010911-01 (Wayne County Circuit Court Aug. 26, 2005). Thus, the Court finds that Petitioner's ineffective assistance of appellate counsel claim is not procedurally defaulted.

The state court, although denying Petitioner's ineffective assistance of appellate counsel claim, failed to provide any basis for doing so. Where a claim is fairly presented in state court,

25

Davis v. Booker, No. 02-75063

but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision. *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 943. However, the independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness" and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694 (1984). The same deference owed by a court to a trial attorney in reviewing that attorney's performance is owed to an appellate attorney. "Counsel's performance is strongly presumed to be effective." *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000) (*citing Strickland*, 466 U.S. at 690).

At the evidentiary hearing in this Court, appellate counsel testified that the only effort he made to locate Todd Selma was to call a telephone number given to him by Petitioner. Appellate counsel testified that he attempted to call the number several times, but never received a response. Appellate counsel did not provide any reason for failing to take any further steps to locate Selma. It was appellate counsel's understanding that, if called to testify at trial, Selma would have testified that Wilder confessed to being the gunman.

26

Davis v. Booker, No. 02-75063

The Court finds that counsel's performance in failing to take further steps to locate Selma fell below an objective standard of reasonableness.  Counsel understood the importance of Selma's potential testimony to the defense and to Petitioner's ineffective assistance of trial counsel claim.  He articulated no strategic reason for failing to take further steps to locate Selma. Moreover, "[i]t is not strategy for an appellate attorney to ask for a *Ginther* hearing and then to conduct it in such a way as to preclude relief for the defendant."  *Mitchell v. Mason*, 325 F.3d 732, 748 n.7 (6th Cir. 2003), *cert. denied* 543 U.S. 1080 (Jan. 10, 2005).

Petitioner was clearly prejudiced by appellate counsel's failure to locate Selma.  The Michigan Court of Appeals denied Petitioner's claim that trial counsel was ineffective in failing to locate Selma largely on appellate counsel's failure to present any testimony regarding whether Selma would have been available to testify and what the substance of his testimony would have been.  Even if counsel had been unable to locate Selma, he could at least have presented testimony that Selma was in custody or on probation during the months preceding Petitioner's trial and, therefore, called into question trial counsel's and the police's efforts in attempting to locate him.  Thus, the Court concludes that appellate counsel was ineffective in failing to attempt to locate Selma or to produce testimony or evidence regarding his location during the pretrial period and that Petitioner was prejudiced by this error.

In reaching this conclusion, the Court notes that appellate counsel's error, although constituting ineffective assistance, does not evidence a lack of commitment or conscientiousness. Appellate counsel's failure does not reflect negatively on his abilities; rather, it reflects that a conscientious attorney can make mistakes which prejudice his client.

27

Davis v. Booker, No. 02-75063

### 4.  General Failure to Consult With Petitioner Prior to Trial

Petitioner also claims that his trial attorney was ineffective in failing to communicate with him privately until eight days prior to trial.[3]  This claim was properly raised before the Michigan Court of Appeals.  That court, while denying Petitioner's ineffective assistance of counsel claims, failed to specifically address this aspect of Petitioner's claims.  Therefore, as discussed above, this court must conduct an independent review of the state court's decision. *Harris,* 212 F.3d 940 (6th Cir. 2000); *Brown,* __ F.3d at __, 2008 WL at *4-5.

The Court had the opportunity to assess Petitioner's and trial counsel's credibility when they testified at the evidentiary hearing.  Based upon their respective demeanor and the substance of their testimony, the Court finds that Petitioner's testimony regarding the number of times he met with counsel and the substance of those meetings to be the more credible.  In addition, Petitioner's credibility regarding this issue is bolstered by the contemporaneous letters written by him to counsel and the trial judge complaining that counsel failed to provide any meaningful consultation.

In *United States v. Morris*, 470 F.3d 596, 599 (6th Cir. 2006), the Sixth Circuit Court of appeals held that a brief attorney-client meeting held in a bullpen behind a courtroom moments before a defendant was forced to decide whether to accept a plea offer did not satisfy the requirement that Petitioner have access to counsel and amounted to a constructive denial of counsel.  The Court of Appeals noted that the "bull pen" is a cell located behind a courtroom, is

---

[3] Petitioner does not argue that counsel's shortcomings amounted to the constructive denial of counsel warranting a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648 (1984).

Davis v. Booker, No. 02-75063

usually crowded with detainees, and requires attorneys and clients to shout their communications through a mesh screen. *Id.* Further, attorneys, court personnel, and officers are frequently present in the area, "further diminishing attorney-client privacy." *Id.* Based upon these facts, the Court of Appeals held that the petitioner suffered a constructive absence of counsel.

Similarly, in *Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003), the Court of Appeals affirmed the district court's granting of a habeas petition based upon a finding of constructive denial of counsel. Counsel in *Mitchell* was suspended from the practice of law for the month immediately preceding trial, met with the defendant for no more than six minutes over the seven-month period preceding trial, and met only with the petitioner in a bullpen area. *Id.* The Court of Appeals held that the pre-trial period constitutes a critical stage of the proceedings because it encompasses counsel's constitutionally imposed duty to investigate. *Id.* at 743.

Although Petitioner does not argue the lack of pre-trial communication amounted to the constructive denial of counsel, *Mitchell* and *Morris* are instructive because they demonstrate that counsel's bullpen meetings with Petitioner were wholly inadequate and emphasize the importance of pre-trial communication to an attorney's ability to fulfill the duty to investigate articulated in *Strickland*. "Because the Supreme Court has repeatedly made clear that there is a duty incumbent on trial counsel to conduct pre-trial investigation, it necessarily follows that trial counsel cannot discharge this duty if he or she fails to consult with his or her client." *Mitchell*, 325 F.3d at 744.

The Court finds that counsel's failure to have a meaningful consultation with Petitioner until eight days before trial fell outside the wide range of professionally competent assistance

29

Davis v. Booker, No. 02-75063

and that the state court's conclusory denial of this claim was an unreasonable application of *Strickland*. Further, the Court finds that Petitioner was prejudiced by this failure because counsel failed to locate witness Todd Selma, failed to utilize the investigator approved by the court, and failed to investigate whether any other witnesses were present at the shooting who could have provided favorable testimony.

### 5. Criminal Histories

Petitioner argues that counsel was also ineffective for failing to request the criminal histories for prosecution witnesses. One of the main prosecution witnesses, Derrick Glaze could have been impeached with a prior felony conviction involving dishonesty.

The Michigan Court of Appeals held that counsel was not ineffective for failing to impeach Glaze with a prior felony conviction. The state court reasoned that "[t]he marginal impact of the alleged error fails to satisfy the prejudice prong of the test for ineffective assistance of counsel." *Davis*, slip op. at 6.

This Court finds that the state court's opinion was an unreasonable application of *Strickland* and failed to consider this impeachment testimony in the larger context of counsel's other errors and the relative weakness of the prosecutor's case. The prior felony conviction, by itself, may not have persuaded the jury to return a not guilty verdict, but, if that impeachment evidence was introduced along with testimony that there was some evidence that Wilder, not Petitioner, was the shooter, it may have been sufficient to sway the jury. The evidence against Petitioner in this case was not overwhelming. The prosecution witnesses all had credibility issues. The main prosecution witness, Wilder, had a definite self interest in identifying

30

Davis v. Booker, No. 02-75063

Petitioner as the shooter.  The two witnesses who identified Petitioner as the shooter gave trial

testimony that was inconsistent with their preliminary examination testimony.  In addition, both

these witnesses admitted to being at the location of the shooting for the express purpose of

selling drugs.  All of these factors raised considerable doubt as to whether the additional

impeachment testimony would have swayed the jury toward acquittal.  Thus, the Court finds that

the state court's opinion is an unreasonable application of *Strickland*.

### B.  Prosecutorial Misconduct Claim

Petitioner next argues that the prosecutor improperly vouched for the testimony of

prosecution witness John Wilder.  Petitioner contends that Wilder could have and should have

been charged as an aider and abettor to murder.  Instead, he was charged as an accessory after

the fact.  If he had been charged as an aider and abettor to second-degree murder, Wilder would

have faced a potential sentence of life imprisonment.  In contrast, an accessory after the fact

charge carried a maximum sentence of five years' imprisonment.

According to Petitioner, the prosecutor several times improperly vouched for Wilder's

credibility and mischaracterized the potential sentence he faced.  Petitioner argues that Wilder

was the beneficiary of an extremely favorable charging decision.  During his opening statement,

the prosecutor made the following remarks regarding Wilder:

> John Wilder came in and he plead [sic] guilty last week.  Probably one of the first
> things you should ask yourself is, John Wilder plead[ed] guilty, . . . he had a
> sentence agreement to that guilty plea.  You should be asking yourself what
> benefit did John Wilder get from the Wayne County Prosecutor's Office to come
> in here and tell his story.  If he got a huge benefit then you may say to yourself,
> you know, I caution myself in whether or not to believe his testimony.  Because
> the bigger the benefit the more likely he may be to frame his testimony in such a
> way to get himself out of trouble. . . . Two things to keep in mind.

31

Davis v. Booker, No. 02-75063

Number one, John Wilder's explanation for what occurred back on the 14th of September didn't come before the guilty plea in this case . . . [his] explanation for these events came within hours after the event, after he's arrested and given his *Miranda* rights. . . .

Item number two, what benefit did John Wilder get from pleading guilty in this case? Well, first of all he got a no charge reduction. That is, he pleaded guilty as charged to the crime of accessory after the fact because that's what he did. He helped the defendant get away from the crime scene, and he didn't report it to the police. . . .

What sentence did he get, he got a probationary sentence, that's going to be determined by Judge Jackson. . . . [H]e's going to be on probation between three and five years for that felony. . . . That sentence falls within the lawful bounds of what a person convicted of that crime should receive. So at the end of the day, John Wilder's benefit in this case is not a huge one. The only thing that can really be said is he's guaranteeing himself that he won't have to go to prison or serve any time in the Wayne County Jail. . ..

The other thing he agrees to in this case is that he will not provide testimony that's perjurous. If he did that he would expose himself to a possible perjury charge, which would carry up to life in prison. . . . So by testifying in this case he binds himself to the idea that he has to testify truthfully otherwise he could be charged with perjury and face up to life in prison. So, he also has a very large motive to tell the truth.

Tr., Vol. II, 18-20.

Respondent argues that this claim is procedurally defaulted. The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 752, if she fails to present an issue to a state

32

Davis v. Booker, No. 02-75063

appellate court at her only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if she fails to comply with a state procedural rule that required her to have done something at trial to preserve her claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162; *see Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001), *cert. denied*, 536 U.S. 947 (2002); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30.

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later

33

Davis v. Booker, No. 02-75063

unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The last state court to issue a reasoned opinion addressing this claim, the Michigan Court of Appeals, reviewed the claim only for plain error because defense counsel did not object to the conduct. The contemporaneous-objection rule was firmly established and regularly followed with respect to claims of prosecutorial misconduct at the time of the petitioner's trial. *See, e.g., People v. Buckey*, 424 Mich. 1, 17-18, 378 N.W.2d 432, 440 (1985); *People v. Sharbnow*, 174 Mich. App. 94, 100, 435 N.W.2d 772, 775 (1989). The state court's reliance on Petitioner's failure to object to the prosecutor's conduct is an adequate and independent state ground for foreclosing review. *See Engle v. Isaac*, 456 U.S. 107, 110 (1982) (concluding that a petitioner who fails to comply with a state rule mandating contemporaneous objections to jury instructions may not challenge the constitutionality of those instructions in a federal habeas corpus proceeding). The fact that the state court of appeals engaged in plain error review of the prosecutorial misconduct claims does not constitute a waiver of the state procedural default. *See Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000). Rather, the review on those terms constitutes enforcement of the state procedural rule. *See Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). Therefore, this Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Petitioner asserts ineffective assistance of trial counsel as cause to excuse his procedural default of this claim. The Supreme Court has held that "cause" under the cause and prejudice

34

Davis v. Booker, No. 02-75063

standard must be "something *external* to the petitioner, something that cannot be fairly attributed

to him." *Id.* at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not

'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance

of the litigation, and the petitioner must 'bear the risk of attorney error' . . . . Attorney error that

constitutes ineffective assistance of counsel is cause, however." *Id.* at 753-54 (internal citations

omitted).

To evaluate whether counsel was ineffective in failing to object to the prosecutor's

comments, the Court considers the strength of the prosecutorial misconduct claim.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements

were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a

due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The

determination whether the trial was fundamentally unfair is "made by evaluating the totality of

the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982).

Improper vouching by a prosecutor poses two dangers:

> [S]uch comments can convey the impression that evidence not presented to the
> jury, but known to the prosecutor, supports the charges against the defendant and
> can thus jeopardize the defendant's right to be tried solely on the basis of the
> evidence presented to the jury; and the prosecutor's opinion carries with it the
> imprimatur of the Government and may induce the jury to trust the Government's
> judgment rather than its own view of the evidence.

*U.S. v. Young*, 470 U.S. 1, 18 (1985). A prosecutor's "improper suggestions, insinuations, and,

especially, assertions of personal knowledge are apt to carry much weight against the accused

when they should properly carry none." *Berger v. U.S.*, 295 U.S. 78, 88 (1935).

35

Davis v. Booker, No. 02-75063

To determine whether a prosecutor's misconduct warrants reversal, the Court considers "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused." *U.S. v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999).

The Michigan Court of Appeals held that the prosecutor did not commit misconduct, stating, in relevant part:

> The mere disclosure of a plea agreement with a prosecution witness, which includes a provision for truthful testimony and sanctions for untruthful testimony, does not constitute improper vouching or bolstering by the prosecutor, unless the prosecutor suggests special knowledge of truthfulness not available to the jury. . . .
>
> Whether Wilder could have been charged with a more serious offense does not change the fact that he was only charged with being an accessory after the fact, to which he pleaded guilty. Therefore, the prosecutor's comments that the witness did not receive a charge reduction were accurate, and did not deceive the jury or deny defendant a fair trial. . . . The witness's interest in the matter was clear.
>
> Similarly, the prosecutor accurately commented that under the plea agreement the witness could face perjury if he lied in court. Such commentary would only be error if the prosecutor suggested special knowledge, other than evidence available to the jury, that the witness was in fact being truthful. . . . The federal authority cited by defendant does not hold otherwise. It is only where, as in *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999), that the prosecutor implies special knowledge regarding the truthfulness of the witness that error occurs. Here, the prosecutor did not suggest he possessed special knowledge to judge the credibility of the witness. In fact, the prosecutor conceded that without other evidence he would not be able to prove defendant's guilt beyond a reasonable doubt. The prosecutor instead pointed to facts in evidence or to be introduced into evidence that supported the witness' credibility.
>
> . . . Reviewing the prosecutor's statements, questions, and argument in context, plain error meriting reversal did not occur. . . .

36

Davis v. Booker, No. 02-75063

*Davis*, slip op. at 2-3.

At trial, Wilder testified that, on the day of the shooting, he and Petitioner planned to buy drugs on "credit" because they had no cash with which to buy the drugs. He testified that he was in the driver's seat of the vehicle when the victim came up to the passenger side, where Petitioner was sitting and showed Petitioner a baggie filled with heroin. Wilder testified that he saw Petitioner grab the baggie and the victim reach in to try to retrieve the baggie. Wilder then heard a gunshot. Wilder testified that he was unaware that Petitioner was in possession of a gun prior to when the shooting occurred.

The Court has seen countless situations where, in similar circumstances, a state prosecutor has chosen to charge a similarly-situated defendant with the greater charge of aiding and abetting second-degree murder. "To be guilty of second-degree murder in Michigan, a defendant must have acted with malice, that is, 'the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm.'" *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007), *quoting People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304, 326 (1980). This requirement applies whether the defendant is charged as a principal or as an aider and abettor. *Id.* The circumstances surrounding the crime in this case certainly would have supported a second-degree murder charge based upon an aiding and abetting theory. The prosecutor's repeated and emphatic statements that Wilder received no benefit for his testimony and that his maximum exposure for his involvement in the crime was five years' imprisonment ignored the reality that he could have been charged as an aider and abettor and appears to be an attempted end run around the plea-agreement-disclosure requirement. Although Wilder did not testify

37

Davis v. Booker, No. 02-75063

pursuant to a plea agreement, the Court finds that the prosecutor's repeated reference to the "minimal" benefit afforded Wilder for his testimony was improper.

The Court also finds that the prosecutor's statements tended to mislead the jury, prejudiced Petitioner by hamstringing his efforts to explore fully Wilder's motives for testifying, and were deliberately placed before the jury by the prosecutor.  In addition, considered in the context of the relative weakness of the prosecution's case, which relied heavily on Wilder's testimony and the testimony of admitted drug dealers, the prosecutor's misconduct rendered the trial fundamentally unfair.  *See Scott v. Foltz*, 612 F. Supp. 50, 58 (E.D. Mich. 1985) (Cohn, J.) (holding witness's false testimony regarding plea agreement was reasonably likely to have impacted the jury's judgment where case essentially amounted to a credibility contest between the witness who testified falsely regarding a plea agreement and the defendant).  The Court finds that the state court's conclusion to the contrary was an unreasonable application of Supreme Court precedent which imposes upon prosecutors an obligation to "refrain from improper methods calculated to produce a wrongful conviction."  *Berger*, 295 U.S. at 88.

The Court has concluded that the prosecutor's conduct was improper.  The Court also concludes that the improper nature of the conduct was obvious and apparent and, therefore, trial counsel should have objected to the conduct and his failure to do so was ineffective.  In addition, because the prosecutor's conduct rendered the trial fundamentally unfair where it prevented Petitioner from fully exploring and the jury from considering Wilder's motives for testifying, the Court finds that Petitioner was prejudiced by counsel's error.  Therefore, the procedural default is excused and the Court grants habeas relief on Petitioner's prosecutorial misconduct claim.

38

Davis v. Booker, No. 02-75063

## C.  Jury's Request to Rehear Testimony and Absence of Counsel

Petitioner argues that the trial court violated his right to due process in failing to respond

promptly to rehear testimony of witnesses John Wilder, Derrick Glaze and the medical examiner.

The jury began deliberating on June 23, 1999 at 2:45 p.m., and was excused for the day at

4:30 p.m.  The next morning, at approximately 9:35 a.m., the jury requested a tape of the judge's

instructions; the tape was given to them.  The jury also requested the testimony of Wilder, Glaze

and the medical examiner.  The trial court judge communicated the jury's request to defense

counsel by telephone and indicated that the court would provide the testimony as soon as defense

counsel, who was engaged in another courtroom, arrived at the courtroom.  While awaiting

defense counsel's arrival, the jury sent another note indicating it had reached a verdict.  The

record does not reflect what time that note was sent, but court reconvened at 11:45 a.m., and the

following exchange occurred:

> The Court:   You had sent a note earlier this morning that you would like the
> tape of the instructions you were given.  Then there was also a note
> asking for the testimony of the driver, Mr. Wilder, Mr. Glaze, and
> the medical examiner.  I was taking some time to kind of get
> everybody together and we were about to deal with that, as we got
> everyone present, when I was informed that you had reached a
> verdict.  So, you were able to go ahead and reach a verdict without
> having that testimony played back; am I correct with that?

The Jury: (in unison) Yes.

Tr., 6/24/99, pp. 3-4.

Petitioner argues that the delay in responding to the jury's request was a constructive

denial of that request and may have resulted in the jury resolving disputes about the evidence

39

Davis v. Booker, No. 02-75063

based upon an incorrect assessment of the requested testimony.  He further argues that counsel's

absence during jury deliberations amounted to the absence of counsel.

The Michigan Court of Appeals held, in relevant part:

Defendant next argues that the trial court erred by constructively denying the
jury's request to rehear witness testimony by waiting two hours for defense
counsel to become available before responding to the request. . . . Alternatively,
defendant argues he was denied his Sixth Amendment right to counsel during a
critical stage of the proceeding, when the jury requested to rehear testimony of
witnesses during its deliberations and his attorney was temporarily occupied in
another courtroom.  We disagree on both claims.

In the present case, the jury began deliberations late in the afternoon and returned
the next day to resume deliberating.  At about 9:35 a.m., the jury sent a not
requesting the testimony of Wilder, one of the drug dealers, and the medical
examiner.  The trial court informed the prosecutor, who was present in the
courtroom, and spoke to defendant's attorney on the telephone because he was
occupied in another courtroom.  The trial court intended to provide the jury the
requested testimony as soon as defense counsel arrived, but before counsel
arrived, the jury had reached a verdict. . . .

M.C.R. 6.414(H) . . . prohibit[s] per se refusals to read back selected witness
testimony. . . . In the present case, the trial court did not specifically inform the
jury that its request for reading of testimony would not be granted.  Defendant
cites no case that holds a trial court's delay in responding to a jury request for
reading testimony . . . is a violation of M.C.R. 6.414(H).  The record here
demonstrates that the trial court was attempting to secure the presence of both
trial counsel to play the requested witness testimony for the jury as soon as
counsel arrived.  On this record, the trial court did not abuse its discretion. . . .

Moreover, when the trial court explained the reason for the delay in responding to
the jury's request, the jury affirmed that it was able to proceed without playback
of witness testimony.  Thus, defendant was not prejudice.

Defendant's argument that he was denied counsel between the time that the jury
requested a rereading of testimony and when his attorney arrived at court is also
without merit.  Defendant argues that because his counsel was temporarily absent
from the courtroom while the jury was deliberating . . . he was denied counsel at a
critical stage of the proceeding.  Defendant was represented by counsel during
jury deliberations.  The record demonstrates that the trial court spoke to

Davis v. Booker, No. 02-75063

defendant's counsel by telephone and the trial court wanted to honor the jury's
request as soon as counsel was able to get to court.  Counsel's temporary absence
from the courtroom did not mean counsel ceased representing defendant.  Thus,
defendant was not denied his right to counsel while the jury was deliberating in
this case.

* * *

Finally, defendant's argument lacks merit when analyzed as a claim of ineffective
assistance of counsel.  Defendant implicitly argues that counsel should have
waived his presence to permit immediate or at least a prompter response to the
jury's request.  However, defendant . . . cannot overcome the presumption that
counsel was constitutionally effective . . . [n]or can defendant overcome the
presumption that counsel's decision to insist on being at defendant's side during
any rereading of trial testimony was not sound trial strategy. . . . The record
simply does not show that counsel's performance was deficient as measured
against the constitutional standard of objective reasonableness under the
circumstances according to prevailing professional norms.

*Davis*, slip op. at 3-4.

In *Crockett v. Hulick*, 542 F.3d 1183 (7th Cir. 2008), the Seventh Circuit Court of

Appeals considered a similar issue on habeas review.  During deliberations, the jury sent three

notes to the state court trial judge.  The first two notes were responded to by the court after

consultation with the parties.  A third note asked the judge for a definition of the word "abet."

The trial court judge directed the sheriff to contact defense counsel.  For a reason not noted on

the record, the substance of the third note was never communicated to defense counsel and the

judge did not respond to the jury.  The jury eventually returned a verdict of guilty.[4]  The Seventh

Circuit held that the trial court's delay, which may have been up to one hour,  in responding to

---

[4]  It is unclear from the record how much time elapsed between the third note and the
guilty verdict.  Three jurors' affidavits each gave different time estimates, from 15 minutes to
one hour.  *Id.* at 1187.

Davis v. Booker, No. 02-75063

the jury's request was not unreasonable. *Id.* The Seventh Circuit did not require further deliberations. *Id.*

Similarly, in *U.S. v. Spagnolo*, 546 F.2d 1117, 1119-20 (4th Cir. 1976), the Fourth Circuit Court of Appeals held that, after sending a question to the judge, it is a jury's decision whether to await an answer from the court or whether to resolve the question of guilt or innocence absent an answer to their inquiry. *See also U.S. v. Rodriguez*, 765 F.2d 1546, 1553-54 (11th Cir. 1985) (holding that delay of 1-1/2 to 2 hours in responding to jury's questions, during which time the jury reached a verdict, was not unreasonable).

In this case, the trial court judge relayed the message to defense counsel and awaited defense counsel's return before responding to the jury. There is no evidence that the delay was the result of the trial court's lack or diligence or that the delay was inordinate. Therefore, the Court concludes that Petitioner's due process rights were not violated by the delay.

Petitioner also argues that he was deprived of counsel at a critical stage of the proceedings warranting a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984). The giving of supplemental jury instructions after deliberations are underway is a critical stage of a criminal trial where the supplemental instructions are different than those originally given. *French v. Jones*, 332 F.3d 430, 438 (6th Cir. 2003). In contrast, instructions given after deliberations commenced which repeat, verbatim, instructions given in the original jury charge in the presence of counsel are not a critical stage of a criminal trial. *Hudson v. Jones*, 351 F.3d 212, 217 (6th Cir. 2003).

In this case, other than providing a verbatim recording of instructions already read to the jury, the court did not communicate with the jury in counsel's absence. While an excessive

42

Davis v. Booker, No. 02-75063

delay in an attorney making himself available to respond to an inquiry during jury deliberations could rise to the level of deprivation of counsel resulting in a presumption of prejudice, the Court finds that the delay in this case does not rise to that level. Although the record indicates an approximate two-hour delay between when the jury submitted its request and when all parties were present in court, it does not indicate that the delay is wholly attributable to defense counsel. The record shows that the trial court judge spoke by telephone with defense counsel. However, the record does not indicate whether there was some delay before that phone contact occurred. Additionally, the record is silent as to whether all other parties, the judge, court reported, and prosecutor, were all immediately available. Petitioner has presented no evidence to establish the delay was wholly attributable to defense counsel. Based upon this record, the Court finds that Petitioner was not deprived of his right to counsel during jury deliberations.

### D. Trial Court's Failure to Conduct Hearing on Efforts to Locate Todd Selma

Petitioner claims that the trial court erred when it failed to conduct a hearing regarding whether the prosecution exercised due diligence in locating a potential *res gestae* witness, Todd Selma.

The failure to endorse or call a res gestae witnesses in accordance with Michigan law does not raise a constitutional claim cognizable on habeas review. *See, e.g., Smith v. Elo*, No. 98-1977, 1999 WL 1045877, at *2 (6th Cir. Nov.8, 1999); *Moreno v. Withrow*, No. 94-1466, 1995 WL 428407, at *1 (6th Cir. July 19, 1995) (per curiam); *Lewis v. Jabe*, No. 88-1522, 1989 WL 145895, at *3 (6th Cir. Dec.4, 1989) (per curiam); *Atkins v. Foltz*, No. 87-1341, 1988 WL 87710, at *2 (6th Cir. Aug.24, 1988) (per curiam). Therefore, this claim is not cognizable on federal habeas corpus review.

43

Davis v. Booker, No. 02-75063

### E.  Appellate Counsel's Alleged Ineffectiveness

Petitioner argues that appellate counsel was ineffective in failing to (i) argue on direct appeal that the prosecutor suppressed evidence favorable to the accused; (ii) failing to locate witnesses Askew, Pasley, and Lyons for the *Ginther* hearing; (iii) failing to raise issues presented in Petitioner's *pro se* supplemental brief; and (iv) failing to consolidate docket number 218315-C wherein Petitioner presented additional claims challenging his conviction, but which was dismissed without prejudice because Petitioner failed to comply with court rules.

First, Petitioner argues that police seized a red shirt worn by Wilder on the day of the shooting, but failed to test the shirt for gunpowder residue, fibers or blood splatter.  With no record support, Petitioner claims that, had the shirt been tested, "the results would have shown that Mr. Davis was not 'the shooter.'" Petitioner's Brief at p. 40.  Petitioner argues that the state's failure to disclose this "material evidence" violated *Brady v. Maryland*, 373 U.S. 83 (1963), and that his appellate attorney's failure to raise this claim on direct appeal rendered him ineffective.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).

In *Brady*, 373 U.S. 83, 87 (1963), the Supreme Court established that a prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad

44

Davis v. Booker, No. 02-75063

faith of the prosecution."  The Sixth Circuit Court of Appeals has explained the "materiality"

analysis as follows:

> [A] showing of materiality does not require that the suppressed evidence in
> question establish the defendant's innocence by a preponderance of the evidence
> Rather, the "question is not whether the defendant would more likely than not
> have received a different verdict with the evidence, but whether in its absence he
> received a fair trial, understood as a trial resulting in a verdict worthy of
> confidence."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). . . .

> [A]ny favorable evidence, regardless of whether the defendant has made a request
> for such evidence, is "material" if "there is a reasonable probability that, had the
> evidence been disclosed to the defense, the result of the proceeding would have
> been different."  *Kyles*, 514 U.S. at 433-34. . . .

*Schledwitz v. United States*, 169 F.3d 1003, 1011-12 (6th Cir. 1999).

"There are three components of a true Brady violation: the evidence at issue must be

favorable to the accused, either because it is exculpatory, or because it is impeaching; that

evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice

must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

> *Brady* obviously does not apply to information that is not wholly within the
> control of the prosecution. There is no Brady violation where a defendant knew or
> should have known the essential facts permitting him to take advantage of any
> exculpatory information, or where the evidence is available ... from another
> source, because in such cases there is really nothing for the government to
> disclose.

*Coe v. Bell*, 161 F.3d 320, 344 (6th Cir.1998) (internal citations and quotations omitted).

In this case, Petitioner has failed to show a *Brady* violation.  First, Petitioner was aware

of the existence of the red shirt and the record does not show that the prosecution withheld

evidence related to tests performed on the red shirt.  The defense did not request that such tests

be performed.  Because no tests were performed on the shirt and, therefore, no evidence,

Davis v. Booker, No. 02-75063

favorable or unfavorable to the defense, was withheld.  Accordingly, the Court finds that appellate counsel was not ineffective in failing to raise this issue on direct appeal where Petitioner has failed to show a *Brady* violation.

Petitioner also argues that appellate counsel was ineffective in failing to locate Askew, Pasley, and Lyons for the *Ginther* hearing.  He argues that, had they been located, the result of his direct appeal would have been different.  These witnesses testified at the evidentiary hearing in this Court.  Askew testified that he was incarcerated at the Wayne County Jail in 1998.  For part of the time he was incarcerated at the jail, Petitioner was also incarcerated there.  Askew learned that Petitioner was awaiting trial for the murder of a man outside a party store in Inkster, Michigan.  After he and Petitioner were no longer incarcerated together, he and Julius Pasley were incarcerated together.  Askew learned that Pasley had information regarding the murder for which Petitioner was awaiting trial.  Askew did not know whether Pasley's information was based upon his presence at the scene of the shooting or based upon what others had told him about the shooting.  Through his conversations with Pasley, Askew learned that the name of the shooter was "Danny."  Askew relayed this information to Petitioner when he and Petitioner was again incarcerated together in Jackson, Michigan.

Preston Lyons testified that he was housed in the Wayne County Jail in 1998.  During that time, he came to know Petitioner and learned that Petitioner was awaiting trial for the shooting death of Troy Prewitt.  While incarcerated at the Wayne County Jail in 1998, Lyons met another inmate who told him that Petitioner was not the shooter, but was, the driver of the vehicle.  Lyons never learned this individual's name.

46

Davis v. Booker, No. 02-75063

Julius Pasley testified that, several days after the shooting, he had a conversation with Derrick Glaze during which Glaze identified Wilder as the shooter. While these witnesses' testimony may have been marginally helpful at the *Ginther* hearing, much of the testimony relies upon hearsay and may not have been considered by the state court. In addition, absent Selma's testimony, the Court cannot conclude that there was a reasonable likelihood the result of the proceeding would have been different had these witnesses testified at the *Ginther* hearing.

Petitioner next argues that appellate counsel was ineffective in failing to raise issues presented in Petitioner's *pro se* supplemental brief. Petitioner's *pro se* supplemental brief raised the following claims:

I.    Defense counsel's failure to allow for conference and preparation and investigation, denied defendant the right to effective assistance of counsel, thereby depriving defendant of a fair trial.

II.    Defense counsel's failure to investigate and present evidence, denied defendant the right to effective assistance of counsel, thereby depriving defendant of a fair trial.

    A.    Trial counsel's failure to investigate and obtain a forensic examiner to test the red hat and red shirt worn by the shooter, Mr. Wilder . . .

    B.    That counsel's failure to utilize Mr. Cleophus Dickerson (the private investigator assigned to defendant's case by the trial judge) services would have discovered Mr. Julius Pasley and Mr. James Askew.

With the exception of the claim that counsel failed to arrange for testing of the red hat and shirt, all of the above-listed claims were raised in appellate counsel's brief and supplemental brief after remand. The claims may have been phrased differently in counsel's brief than in Petitioner's, but the substance of the claims was presented by appellate counsel. With respect to

47

Davis v. Booker, No. 02-75063

Petitioner's claim regarding forensic testing of the red shirt and red hat, Petitioner has failed to

show that he was prejudiced by the lack of forensic testing.

Petitioner also claims that counsel was ineffective in failing to consolidate docket number

218315-C, wherein Petitioner presented additional claims challenging his conviction, with his

direct appeal.  Docket number 218315-C was dismissed without prejudice because Petitioner

failed to comply with court rules That matter was dismissed for failure to pursue the case in

conformity with the rules and presented the following claims:

I.     That defense counsel failed to seek a continuance or adjournment of the
       preliminary hearing; wherein defense counsel could have investigated and
       properly prepare a defense.

II.    That defense counsel failed to raise the issue that, the petitioner arrested in his
       home without an arrest warrant and without probable cause; wherein Petitioner's
       Fourth Amendment rights were violated . . .

III.   Defense counsel failed to raise the issue that Petitioner's warrantless arrest
       deprived the petitioner of his U.S.C.A. Const. Amend. 4; along with his
       statutory rights to be brought promptly within 48 hours before a
       magistrate for an arraignment on a complaint and warrant . . . furthermore,
       the lineup identification of the defendant during this unlawful detention
       was overly suggestive.

IV.    Defense counsel failed to call the chief investigating officer to determine why he
       or she did not preserve the "black Ford Escort wagon," and to see if this conduct
       deprived the petitioner due process right to have a fair trial.

V.     Defense counsel failed to obtain a statement from Mr. Todd Selma, who was
       talking to co-defendant John Wilder III about this case wherein the co-defendant
       confessed to this murder.

VI.    Defense counsel failed to vigorously argue to this court for the Petitioner to take a
       polygraph test; since the petitioner maintains his innocence and wishes to
       introduce scientific evidence to support his claim.

48

Davis v. Booker, No. 02-75063

VII.    Defense counsel failed to vigorously argue that Michigan Compiled Laws
Annotated Section 776.21 is unconstitutional, wherein this state statute is
inapplicable to this Petitioner being tried for murder, but applicable to the other
defendant's being tried for criminal sexual conduct.

In deciding which claims to raise on direct appeal, appellate counsel should always err on

the side of being overinclusive. It often may be difficult for appellate counsel to predict what

claim or claims will be deemed meritorious by an appellate panel. Presenting all claims that

have arguable merit avoids an attorney mistakenly omitting a claim that an appellate court

ultimately may have deemed meritorious. In this case, however, although it may have been

prudent for appellate counsel to present all of the claims desired by Petitioner, his failure to do so

did not prejudice Petitioner. Petitioner has not shown a reasonable likelihood that the omitted

claims, if presented, had a reasonable likelihood of success. Therefore, the Court denies this

claim.

### F.  Fee Schedule for Appellate Attorneys

Petitioner argues that the fees paid to appellate attorneys representing indigent defendants

are so inadequate as to result in an "institutionalized method and system of ineffective assistance

of counsel." Petitioner's brief at 43.

The fact that Petitioner's court-appointed attorney may have been underpaid is

insufficient, in and of itself, to show the deprivation of the effective assistance of appellate

counsel. *Giegler v. Trombley*, No. 03-cv-70692, 2003 WL 22480131, * (E.D. Mich. Oct. 15,

2003). Petitioner's claim that his appellate attorney was underfunded is insufficient to establish

that the fee schedule for appellate attorneys results in institutionally sanctioned, program-wide

ineffective assistance of counsel. Appellate counsel testified that his representation in this

49

Davis v. Booker, No. 02-75063

matter was not negatively impacted by the fee schedule system in that he did not base his strategic decisions on the amount of compensation.  The Court finds that appellate counsel was credible in this regard.  While the Court has found that appellate counsel was ineffective in his representation of Petitioner, the Court finds that appellate counsel's ineffectiveness was not the result of the applicable fee schedule.

## Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **CONDITIONALLY GRANTED**.

Unless a date for a new trial is scheduled within ninety days, Petitioner Davis must be unconditionally released.

S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  January 22, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 22, 2009, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary